UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ANTHONY GREENE,

            **Plaintiff,**

   - against -

THE CITY OF NEW YORK, DETECTIVE
DAVID COWAN SH. # 1558, DETECTIVE
CHRISTOPHER SCHILLING, SH. # 6516,
DETECTIVE CARDINALE and POLICE
OFFICER JOHN DOE 1-10,

            **Defendants.**

-------------------------------------------------------X

**OPINION AND ORDER**

**12 Civ. 6427 (SAS)**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/25/13

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

        On August 22, 2012, Anthony Greene filed suit pursuant to 42 U.S.C.

§ 1983 ("section 1983") against the City of New York and several detectives with

the New York Police Department ("NYPD"). Plaintiff brought claims, *inter alia*,

for false arrest and violation of his civil rights under the Fourth Amendment.[1]

Approximately eight months later, in April 2013, the parties executed a Stipulation

and Order of Dismissal, thereby settling this action for $7,501 plus reasonable

attorneys' fees and costs. Plaintiff now moves pursuant to 42 U.S.C. § 1988

("section 1988") seeking an award of $51,577.50 in attorneys' fees and $560.00 in

---

[1]    Plaintiff also brought claims for intentional infliction of mental and
emotional distress, negligent infliction of mental and emotional distress, as well as
a *Monell* claim against the City.

costs. For the following reasons, plaintiff's motion is granted but not in the amount requested.

## I. BACKGROUND

On August 1, 2011, plaintiff was arrested by detectives of the Brooklyn North Narcotics unit of the NYPD.[2] Plaintiff was charged with possession of narcotics and remained in custody for approximately twenty-four hours.[3] The charges against him were eventually dismissed.[4] Plaintiff filed this lawsuit on August 12, 2012, alleging, *inter alia*, violations of his Fourth Amendment rights. The case was docketed under the Court's Plan for Certain § 1983 Cases Against the City of New York ("Section 1983 Plan").

On January 31, 2013, plaintiff's counsel made a settlement demand for $40,000.[5] A mediation session was held on February 21, 2013, during which defendants made a counteroffer of $5,000, inclusive of costs and fees.[6] Contrary to the requirements of the Section 1983 Plan, plaintiff did not personally appear at the

---

[2]     *See* First Amended Complaint ("FAC") ¶ 10.

[3]     *See id.* ¶ 12.

[4]     *See id.* ¶ 16.

[5]     *See* 1/31/13 E-mail from plaintiff's counsel, Michael Colihan, to defendants' counsel, Tobias Zimmerman, Ex. A to the Declaration of Tobias E. Zimmerman in Support of Defendants' Memorandum in Opposition to Plaintiff's Motion for Attorney's Fees ("Zimmerman Decl.").

[6]     *See* Zimmerman Decl. ¶ 3.

mediation.[7]  Because of plaintiff's absence, the parties were unable to make any

progress toward settlement during that mediation session.[8]  Defendants made clear

that they were amenable to another mediation session if plaintiff would personally

attend.[9]  Plaintiff's counsel refused further mediation unless and until the City

recognized this case as "a 5 figure matter."[10]  Defendants refused to make such a

concession as a precondition to further mediation.  Plaintiff's counsel therefore

refused to return to mediation, accusing the City of bad faith.[11]

On March 22, 2013, the City served plaintiff with a Rule 68 Offer of

Judgment in the amount of $7,501.[12]  Although the offer was accepted on March

27, 2013, plaintiff did not file the Rule 68 Offer of Judgment with the Court.

Instead, plaintiff chose to negotiate a separate settlement agreement based on the

---

[7]       *See id.* ¶ 4.

[8]       *See id.*

[9]       *See id.  See also* 3/4/13 E-mail from Zimmerman to Colihan, Ex. B to
the Zimmerman Decl. ("I would be in favor of having a follow-up mediation
before the initial conference to see if we can make progress towards settlement.").

[10]      3/6/13 E-mail from Colihan to Zimmerman, Ex. C to the Zimmerman
Decl.

[11]      *See* 3/6/13 E-mail from Colihan to Zimmerman, Ex. D to the
Zimmerman Decl. ("I will have to pass on further mediation.  I don't think the City
is dealing in good faith, and frankly don't have time to waste in this fashion.").

[12]      *See* Ex. E to the Zimmerman Decl.

terms of the Rule 68 Offer of Judgment.[13]  The parties then negotiated a settlement agreement and submitted a stipulated Order of Dismissal, which I signed on April 9, 2013.  Approximately one month later, plaintiff's counsel provided defendants with a Statement of Services detailing the work he performed in this case.[14]  In the Statement of Services, plaintiff's counsel demanded $31,312.50 in legal fees (83.5 hours at $375 per hour) and $560 in costs.[15]  Defendants offered $8,067.50 to settle the attorneys' fees issue which consisted of 46.1 hours of compensable work at $350 per hour, discounted by fifty percent for plaintiff's limited success, plus $560 in costs.[16]  Plaintiff rejected defendants' offer and filed the instant motion for attorneys' fees.

---

[13]     *See* 3/27/13 E-mail from Colihan to Zimmerman, Ex. F to the Zimmerman Decl.

[14]     *See* 5/10/13 E-mail from Colihan to Zimmerman, Ex. G to the Zimmerman Decl.

[15]     *See* 9/16/13 Statement of Services, Ex. H to the Zimmerman Decl., at 20.

[16]     *See* 6/28/13 Letter from Zimmerman to Colihan, Ex. I to the Zimmerman Decl., at 3-4.

## II.   LEGAL STANDARD

### A.   Presumptively Reasonable Fee

A "prevailing party" in a civil rights action is entitled to an award of attorneys' fees and costs.[17]   Furthermore, a prevailing party is also entitled to reimbursement for time reasonably expended in preparing an attorneys' fee application.[18]   A "prevailing party" is a party who achieves a "'material alteration of the legal relationship of the parties'"[19]   "'The district court retains discretion to determine . . . what constitutes a reasonable fee.'"[20]

---

[17]   *See* 42 U.S.C. § 1988(b) (stating that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" in civil rights actions).   *See also Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001) ("Although a district court typically has wide discretion in choosing whether to deny attorneys' fees, . . . this discretion is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees unless special circumstances would render an award unjust.").

[18]   *See Short v. Manhattan Apartments, Inc.*, No. 11 Civ. 5989, 2013 WL 2477266, at * 8 (S.D.N.Y. June 10, 2013) (citing *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees.")).

[19]   *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 604 (2001) (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)).

[20]   *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998), ellipsis in original).

In determining the amount of a fee award, courts must calculate the "lodestar" figure which represents the "presumptively reasonable fee."[21]  The lodestar figure is calculated "by multiplying a reasonable hourly rate by the number of reasonably expended hours."[22]  The Supreme Court has endorsed the "lodestar" approach as the superior method in calculating  attorneys' fees for several reasons.[23]

> First, a "reasonable" fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. . . Second, the lodestar method yields a fee that is presumptively sufficient to achieve this objective. [Finally,] the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee.[24]

---

[21]  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010) (stating that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case) (emphasis in original).  *Accord Millea*, 658 F.3d at 166 ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'").

[22]  *Bergerson v. New York State Office of Mental Health, Central New York Psychiatric Center*, 652 F.3d 277, 289 (2d Cir. 2011).

[23]  *See Perdue*, 559 U.S. at 551.

[24]  *Id.* at 552 (quotation marks and citation omitted).

"In determining what fee is reasonable, the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'"[25] "In so doing, 'the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'"[26] "In reducing the 'lodestar' amount, the court may exclude the excessive and unreasonable hours from its calculation by making an across-the-board reduction, or percentage cut, in the amount of hours."[27]

**B.     Proportionality**

There is no rule requiring proportionality between the amount of fees requested and the damages recovered.  The Second Circuit has stated:

> While a court may, in exceptional circumstances, adjust the lodestar, it may not disregard it entirely.  Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes:

---

[25]     *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

[26]     *Id.* (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985)).

[27]     *T.S. Haulers, Inc. v. Cardinale*, No. 09 CV 0451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing *Green v. City of New York*, 403 Fed. App'x 626, 630 (2d Cir. 2010) (stating that district courts are authorized "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'") (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (internal quotation marks and citation omitted))).

7

assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery. Thus, the district court abused its discretion when it ignored the lodestar and calculated the attorneys' fees as a proportion of the damages awarded.[28]

"Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of low monetary value, [courts] have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation."[29]

## C.    Degree of Success

"[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff."[30] "Hours spent on unsuccessful fee-shifting claims, like those spent on claims wholly ineligible for fee-shifting, must be excluded from the

---

[28]    *Millea*, 658 F.3d at 169 (citation omitted, emphasis in original).

[29]    *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (citing cases). *Accord Torres v. Gristede's Operating Corp.*, 519 Fed. App'x 1, 5 (2d Cir. 2013) (citing *Kassim*, 415 F.3d at 252).

[30]    *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

reasonable hours spent on the case when calculating the lodestar."[31]  As recognized

by the Supreme Court, where

> a plaintiff has achieved only partial or limited success, the
> product of hours reasonably expended on the litigation as
> a whole times a reasonable hourly rate may be an excessive
> amount.  This will be true even where the plaintiff's claims
> were interrelated, nonfrivolous, and raised in good faith.
> Congress has not authorized an award of fees whenever it
> was reasonable for a plaintiff to bring a lawsuit or
> whenever conscientious counsel tried the case with
> devotion and skill.  Again, the most critical factor is the
> degree of success obtained.[32]

The "degree of success" inquiry "is not limited to inquiring whether a plaintiff

prevailed on individual claims."[33]  "Both the quantity and quality of relief obtained,

as compared to what the plaintiff sought to achieve as evidenced in her complaint,

are key factors in determining the degree of success achieved."[34]  Accordingly, "a

district judge's authority to reduce the fee awarded to a prevailing plaintiff below

the lodestar by reason of the plaintiff's 'partial or limited success' is not restricted

---

[31]     *Millea*, 658 F.3d at 168.

[32]     *Hensley*, 461 U.S. at 436.

[33]     *Barfield*, 537 F.3d at 152.

[34]     *Id.* (quotation marks and citation omitted).

either to cases of multiple discrete theories or to cases in which the plaintiff won only a nominal or technical victory."[35]

### D.     Hourly Rate

"To determine the reasonable hourly rate for each attorney, courts must look to current market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"[36] "A review of precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time."[37]  In determining the presumptively reasonable attorneys' fee award,

> the district court should, in determining what a reasonable, paying client would be willing to pay, consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the

---

[35]     *Kassim*, 415 F.3d at 256.

[36]     *Heng Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007) (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)).

[37]     *Tatum v. City of New York*, No. 06 Civ. 4290, 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010) (quotation marks and citation omitted).  *Accord Mugavero v. Arms Acres Inc.*, No. 03 Civ. 5724, 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010).

resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or initiated the representation himself, whether the attorney was initially acting pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) the attorney expected from the representation.[38]

Accordingly, a reasonable hourly rate is "what a reasonable paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."[39]  "The reasonable hourly rate for such calculation is determined by the rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."[40]  The reasonable rate is determined by "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which may include taking "judicial notice of the rates

---

[38]    *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 484 F.3d 162, 164 (2d Cir. 2007), *amended and superseded on denial of rehearing*, 493 F.3d 110 (2d Cir. 2007), *amended and superseded*, 522 F.3d 182, 184, 192 (2d Cir. 2008).

[39]    *Bergerson*, 652 F.3d at 289-90.  *Accord Arbor Hill*, 522 F.3d at 190 ("The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.").

[40]    *Streck v. Board of Educ. of the East Greenbush Cent. Sch.. Dist.*, 408 Fed. App'x 411, 416 (2d Cir. 2010).

awarded in prior cases."[41]  The burden is on the movant to show "by satisfactory evidence – in addition to the attorney's own affidavits – that the requested hourly rates are the prevailing market rates."[42]

## III.   DISCUSSION

### A.   Counsel's Hourly Rate

In determining reasonable hourly rates for civil rights attorneys, this Court has stated it is appropriate to determine whether the billing attorneys are "more like members of a large New York City law firm than they are like members of a nonprofit organization or a two to three-person obscure law firm."[43]  Plaintiff's counsel, Michael Colihan, is a solo practitioner.[44]  In his fee motion, Colihan requests $450 per hour, citing *Tatum v. City of New York* in support thereof.[45]  Yet

---

[41]    *Farbotko v. Clinton Cnty*, 433 F.3d 204, 209 (2d Cir. 2005).

[42]    *Id.*

[43]    *Wise v. Kelly*, 620 F. Supp. 2d 435, 446 (S.D.N.Y. 2008) (citing cases awarding rates between $350-$430 per hour for experienced civil rights litigators).

[44]    The size of the law firm is a significant factor in determining the relevant market rates.  *See, e.g., Reiter v. Metropolitan Transp. Auth. of State of New York*, No. 01 Civ. 2762, 2007 WL 2775144, at *7 (S.D.N.Y. Sept. 25, 2007) ("[T]he fact is that the large firms listed on the [National Law Journal] survey have acquired a reputation that allows them to command high rates in the market.  Many other firms, in particular smaller firms that may be providing equally capable services, simply do not command anywhere near such rates . . . .").

[45]    In *Tatum*, the two charging attorneys were awarded the standard rates they charged their clients, $400 and $450 per hour.  *See* 2010 WL 334975, at *5

(continued...)

Colihan has conceded that he has accepted rates of $325-$350 per hour from the City for "a number of years."[46]  Moreover, in the first Statement of Services served on the City, Colihan chose an hourly rate of $375 per hour.[47]

"A reasonable starting point for determining the hourly rate for purposes of a [presumptively reasonable fee] calculation is the attorney's customary rate."[48]  Although Colihan has not provided this Court with the actual hourly rate he charges his clients, I find the rate of $375 per hour is on par with rates charged by seasoned civil rights solo practitioners with comparable experience.  Accordingly, Colihan will be compensated for a reasonable number of hours at the rate of $375 per hour.

**B.    Number of Hours**

Colihan's time entries are presented in numbered paragraphs in the second Statement of Services, attached as Exhibit 1 to his undated Affirmation. The last page of the Statement of Services summarizes the total hours requested as

---

[45](...continued)
("Although the actual rate an attorney charges paying clients is persuasive evidence of reasonableness, compensable attorneys' fees must ultimately conform to market rates.").

[46]    Affirmation of Michael Colihan ("Colihan Aff.") ¶ 22.

[47]    *See* Statement of Services, Ex. H to the Zimmerman Decl., at 20.

[48]    *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 169-70 (S.D.N.Y. 2003).

follows: 102.4 attorney hours at $450 per hour, 3.3 paralegal hours at $125 per hour.  Colihan also spent 11.3 hours on his reply memorandum of law, thus increasing his hours to 113.7 hours.[49]

A review of the Statement of Services reveals two basic categories of non-compensable time: (1) administrative work more properly performed by a paralegal, and (2) review of pleadings and documents in other cases.  For example, the first category includes entries such as: "Visit to 5th floor clerk's office to order file on underlying criminal action at 120 Schermerhorn Street, Brooklyn, NY" and "Review ECF bounces."  These entries describe work of an administrative nature that should have been done by a paralegal rather than an attorney charging $375 per hour.  Accordingly, I am deducting 5.1 hours from Colihan's total hours (entries # 4, 5, 10, 12, 13, 14, 16, 19, 25, 26, 30, 68 and 69) but those hours will be compensated at the paralegal rate of $125 per hour.[50]

As for the second category, there are numerous entries relating to the review of pleadings and documents in unrelated cases which have settled.  The first

---

[49]     *See* 9/29/13 Second Declaration of Michael Colihan in Support of This Application for Attorney's Fees ¶ 2.

[50]     In his Affirmation, Colihan asks that this time be billed at the rate of $150 per hour yet the "Paralegal rate" in the Statement is $125 per hour.  *See* Affirmation of Michael Colihan ("Colihan Aff.") ¶ 28; Statement at 20.  Because I find $150 per hour for administrative tasks to be excessive, paralegal work supported by detailed time entries will be compensated at the rate of $125 per hour.

such entry reads: "Read docket sheet, orders & stipulation of settlement in Gray v. NYC, et al 08-cv-02210 (EDNY) where def Schilling is also a defendant settled for $25,000.00."[51] Colihan has litigated nearly two hundred civil rights cases within the Second Circuit, all of which but a "handful" were settled.[52]  Given his experience, it is unclear why Colihan would need to review pleadings and documents in a handful of other cases, even those where Detective Christopher Schilling was named as a defendant.  Resort to outside materials seems completely unnecessary given that this case settled at an early stage without any motion practice.  In any event, it is highly unlikely that a reasonable client looking to minimize the costs of his own litigation would pay for time spent by his attorney reviewing unrelated case files.  The time entries for this type of work total 24.3 hours, all of which I am excluding as non-compensable time.  Thus, out of 113.7 total attorney hours charged, 84.3 attorney hours are included in the lodestar calculation.  Only 5.1 paralegal hours are included as there is no supporting time entry for the 3.3 hours listed in the Statement.   Accordingly, the lodestar amount, before any across-the-board reduction is made, totals $32,250 [(84.3 hours x $375 per hour) + (5.1 hours x $125 per hour)].

---

[51]     Statement entry # 28.

[52]     Colihan Aff. ¶ 22 ("I have litigated over 115 civil rights matters in this Court and an additional 80 in the US District Court for the Eastern District of New York.").

### C.    Percentage Reduction for Limited Success, Duplication,  and Excessiveness

"There is a strong presumption that the lodestar figure represents the 'reasonable' fee, even when that figure is disproportional to the amount of damages obtained by the successful plaintiff."[53]   "Nevertheless, a court must still determine whether the plaintiff's level of success is so low as to warrant a reduction in the fee award[.]"[54]   Furthermore, a court can make a percentage reduction for claimed hours it views as excessive and unnecessary.  Here, a combined reduction of forty percent is warranted to account for plaintiff's limited success  and to eliminate excessive and redundant time charges.

According to plaintiff, his success was in no way limited by his acceptance of the $7,501 settlement, even though his original demand was for $40,000.  Plaintiff states that "[a] [settlement] of $7501.00 works out to over $312.00 per hour to be in jail, with no deduction for attorney's fees."[55]   In offering this calculation, plaintiff has implicitly conceded that the $7,501 settlement was compensation for his claims of false arrest and violation of Fourth Amendment

---

[53]     *Anderson v. City of New York*, 132 F. Supp. 2d 239, 245 (S.D.N.Y. 2001) (citing *Grant v. Martinez*, 973 F.2d 96, 101-02 (2d Cir. 1992)).

[54]     *Id.*

[55]     Plaintiff's's [sic] Reply Memorandum of Law in Support of His Motion for Attorney's Fees ("Reply Mem.") at 7.

rights.  But plaintiff brought three other claims in his First Amended Complaint: intentional infliction of emotional distress, negligent infliction of emotional distress, and a *Monell* violation.  While the emotional distress claims can be seen as interrelated to the false arrest claim, the *Monell* claim is a distinct and separate claim.  "Although full fees may be awarded to a partially prevailing plaintiff when the underlying claims are intertwined, the court retains substantial discretion to take into account the specific procedural history and facts of each case."[56]

        In addition to plaintiff's limited success, there is considerable duplication of time entries in Colihan's Statement of Services.  For example, on March 12, 2013, Colihan charged 1.10 hours for the following work: "I prepared the first amended complaint to include the names of additional defendants with copies to my adversary ACC Zimmerman and the Clerk of the USDC SDNY I also reviewed and marked the file".[57]  This exact entry appears verbatim on March 21, 2013.[58]  In addition, entry number 84 appears verbatim as entry number 87 and

---

[56]     *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004) (citing *Hensley*, 461 U.S. at 435-37).

[57]     Statement at 14.

[58]     *See id.* at 18.

entry number 85 is repeated verbatim in entry number 88.[59]  This sort of double-

billing is especially troublesome to the Court.

Finally, an across-the-board reduction is needed to trim the fat from

plaintiff's fee request.[60]  "Courts in this Circuit are permitted to reduce an

excessive fee request by making an across-the-board percentage [reduction] for

redundant or otherwise unnecessary hours."[61]  The total number of compensable

attorney hours (84.3 hours) is simply too high for the amount of work expended by

counsel.  In this case, there were no depositions or motions.  Furthermore, there

was only one mediation session and one initial conference before this Court.  By

comparison, the Assistant Corporation Counsel assigned to this case, who was the

---

[59]      *See id.* at 15.

[60]      *See Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)
(court should "deduct a reasonable percentage of the number of hours claimed as a
practical means of trimming fat from a fee application"); *New York State Ass'n for
Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (because "it
is unrealistic to expect a trial judge to evaluate and rule on every entry in an
application" courts may apply across-the-board percentage reductions); *American
Camping Ass'n v. Camp Shane*, No. 06 Civ. 716, 2006 WL 1982770, at *2-*4
(S.D.N.Y. June 16, 2006) (approving significant across-the-board reduction where
matter was overstaffed); *General Electric Co. v. Compagnie Euralair, S.A.*, No. 96
Civ. 884, 1997 WL 397627, at *6 (S.D.N.Y. July 3, 1997) (reducing the fee
request by fifty percent for, inter alia, excessive and duplicative hours billed).

[61]      *Builders Bank v. Rockaway Equities, LLC*, No. CV 2008–3575, 2011
WL 4458851, at *9 (E.D.N.Y. Sept. 23, 2011).

only attorney billing time, spent approximately thirty-five hours on this litigation.[62]

Colihan spent an astonishing 37.5 hours on the instant fee application alone.[63]  A

percentage reduction is clearly needed to adjust for Colihan's heavy-handed time

entries.

Therefore, in my discretion, I find that an across-the-board percentage

reduction of forty percent is needed given the combination of plaintiff's limited

success and Colihan's often repetitive and excessive time charges.  Accordingly,

plaintiff is hereby awarded $18,967.50 in attorneys' fees [(84.3 hours x $375 per

hour x 60%) + (5.1 hours x $125 per hour)].

**D.    Costs**

An award of costs under section 1988 "normally include[s] those

reasonable out-of-pocket expenses incurred by the attorney and which are normally

charged fee-paying clients."[64]  "The rationale for this rule is that attorney[s'] fees

---

[62]     *See* Zimmerman Decl. ¶ 14.  Plaintiff's characterization of this statement as a "conclusory statement," Reply Mem. at 7, is misplaced.  Because ACC Zimmerman is an officer of the Court, statements he makes in a sworn declaration are presumed to be truthful.

[63]     Colihan charged a total of 15.9 hours on legal research for this motion.  This seems unreasonably high for an experienced civil rights attorney like Colihan who has filed numerous attorneys' fees motions in the past and is therefore familiar with the law in this area.

[64]     *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278,

(continued...)

19

include expenses that are 'incidental and necessary' to the representation, provided they are 'reasonable.'"[65] Accordingly, "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate."[66]

Here, plaintiff is seeking $560 in costs which consists of a $350 filing fee and a service fee of $210. These amounts appear reasonable and will be included in plaintiff's fee award.

## IV.   CONCLUSION

For the foregoing reasons, plaintiff is hereby awarded attorneys' fees of $18,967.50  and costs of $560, for a total award of $19,527.50. The Clerk of the Court is directed to close plaintiff's motion for attorneys' fees and costs (Docket Entry # 17).

_____

[64](...continued)
283 (2d Cir. 1987) (citation marks and citation omitted). *Accord Weyant*, 198 F.3d at 316 (stating that "a reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees") (citing cases).

[65]     *Reichman*, 818 F.2d at 283 (quoting *Northcross v. Board of Educ.*, 611 F.2d 624, 639 (6th Cir. 1979)).

[66]     *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987) (citing cases).

20

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            October 25, 2013

- Appearances -

**For Plaintiff:**

Michael Colihan, Esq.
44 Court Street, Suite 906
Brooklyn, NY 11201
(718) 488-7788

**For Defendants:**

Tobias E. Zimmerman
Assistant Corporation Counsel
100 Church Street
New York, NY 10007
(212) 356-2661